UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ERIC DONEGAN,                                    :
                                                 :
                         Plaintiff,              :
                                                 :                    **OPINION AND ORDER**
                    -against-                    :                    **15-CV-00655 (DLI)**
                                                 :
CAROLYN W. COLVIN,                               :
Acting Commissioner of Social Security,          :
                                                 :
                         Defendant.              :
----------------------------------------------------------------x
**DORA L. IRIZARRY, Chief United States District Judge:**

On December 7, 2011, Plaintiff Eric Donegan ("Plaintiff") filed an application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), alleging disability due to bilateral ankle injuries, left knee problems, and depression. *See* Certified Administrative Record ("R."), Dkt. Entry No. 18 at 26, 145-50, 169. Plaintiff's application was denied, *Id.* at 82-85, and he requested a hearing on April 11, 2012. *Id.* at 86-88. On June 4, 2013, Plaintiff testified in a hearing before Administrative Law Judge Hilton R. Miller (the "ALJ"). *Id.* at 58-74. On June 19, 2013, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Act. *Id.* at 23-41. On December 12, 2014, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision. *Id.* at 1-7.

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g). *See* Complaint ("Compl."), Dkt. Entry No. 1. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Plaintiff moved for judgment on the pleadings seeking reversal of the Commissioner's decision and remand solely for calculation and awarding of benefits. *See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem."), Dkt. Entry

No. 15.  Alternatively, Plaintiff seeks the decision of the Commissioner be reversed and the matter remanded for a new hearing and decision.  *Id.*  The Commissioner cross-moved for judgment on the pleadings seeking affirmance of the denial of benefits.  *See* Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Mem."), Dkt. Entry No. 17.  For the reasons set forth below, the Commissioner's cross-motion for judgment on the pleadings is granted.  Plaintiff's motion for judgment on the pleadings is denied and this appeal is dismissed.

## BACKGROUND[1]

### I.  Non-Medical and Self-Reported Evidence

Plaintiff was born in 1971 and was 40 years old at the time he applied for SSI.  R. at 145.  He had less than a high school level education.  *Id.* at 68.  He testified that he worked part-time for three hours a day in 2012 but was terminated.  *Id.* at 61-62.  Otherwise, he had no other past work experience. *Id.* at 36, 62.

In a function report dated January 7, 2012, completed in connection with his application, Plaintiff reported that he experienced chronic pain, insomnia, and nightmares.  *Id.* at 182-92.  He cleaned, ironed, and watered plants without assistance, but did not prepare his own meals.  *Id.* at 183-84.  He went outside three to four times a week, was capable of going outside alone, and shopped for clothing and food in stores.  *Id.* at 184-85.  Plaintiff reported needing no help or reminders to take care of personal needs and grooming or to take his medication.  *Id.* at 183.  Plaintiff reported that he was unable to stand for certain periods of time and that lifting too much weight, standing, and walking caused ankle and leg pain.  *Id.* at 184, 187.  He further reported that climbing stairs was painful and that he was unable to kneel or squat because one of his legs cannot

---

[1] Having thoroughly and carefully reviewed the administrative record, the Court finds the Commissioner's factual background accurately represents the relevant portions of said record.  Accordingly, the following background is taken substantially from the background section of the Commissioner's brief, except as otherwise indicated.

bend.  *Id.* at 187.  He used a wheelchair, brace, and crutches and was unable to walk without needing to rest.  *Id.* at 188.

Plaintiff testified at a June 2013 administrative hearing that he had not worked prior to his injury in 2011 because of depression.  *Id.* at 62.  Plaintiff testified that he had used marijuana and cocaine in previous years, but did not believe that they caused his depression or mood swings.  *Id.* at 66.  He also testified that, contrary to his doctors' predictions, he did not make a full recovery in his ankles by January 2013, and he could not use his ankles and experienced daily pain.  *Id.* at 62.  He testified that he could not sit for too long and could not work because his pain medication made him drowsy.  *Id.* at 63.  Plaintiff reported that he could not lift or carry more than five pounds while standing and using his cane.  *Id.* at 63-64.  He claimed that he could not stand up long enough to cook, clean, or wash laundry and could only stand for ten to fifteen minutes before he had to sit due to pain, sit for twenty to thirty minutes before needing to stretch his legs, and walk for about eighty to one hundred feet.  *Id.* at 67-68.  On a typical day, he sat and watched television or surfed the Internet.  *Id.* at 67.

Melissa Fass Karlin, a vocational expert, testified at Plaintiff's hearing.  *Id.* at 70-74, 126.  The ALJ asked whether there was work that a hypothetical individual with Plaintiff's age, vocational background, and residual functional capacity ("RFC") could perform.  *Id.* at 71.  Ms. Karlin responded that the hypothetical individual would be able to perform unskilled, sedentary work as a surveillance systems monitor, with 465 such jobs existing locally, order clerk, with 18,929 jobs existing nationally and 628 jobs locally, and addresser, with 19,400 jobs existing nationally and 1,083 jobs locally.  *Id.* at 71-72.

## II.  Medical Evidence

### a.  Medical Evidence Prior to December 7, 2011 (SSI Application Date)

On November 18, 2011, Plaintiff complained of a bilateral ankle injury with severe pain and lower back pain during a visit to Staten Island Physician Practice. *Id.* 224-25, 703-04. Plaintiff reported to nurse practitioner ("NP") Toni Jean Ferrara that he had jumped a fence and landed on his feet three days earlier. *Id.* He had sought emergency room ("ER") treatment for pain and swelling in both ankles and was told that an x-ray was negative. *Id.* NP Ferrara observed swelling and severe pain with motion in Plaintiff's ankles without motor or sensory deficits. *Id.* NP Ferrara spoke with an attending physician at the Richmond University Medical Center ("Richmond") ER, who informed her that Plaintiff's x-ray confirmed bilateral calcaneal fractures. *Id.* NP Ferrara referred him back to the Richmond ER. *Id.*

On the same day, at the ER, Plaintiff complained of constant, non-radiating pain in his heels. *Id.* at 244. Upon examination, general surgeon Feroze B. Khan, M.D., observed bilateral ankle swelling, worse on the left side, and noted that Plaintiff's dorsalis pedis and posterior tibial pulses were difficult to palpate due to edema, but that Plaintiff had good capillary refill over the toes. *Id.* Dr. Khan also noted Plaintiff's reported history of a fall. *Id.* A CT-scan showed bilateral comminuted fractures of the calcaneal bones. *Id.* Plaintiff reported that his pain level was 5 out of 10 and complained that pain was constant and exacerbated by movement. *Id.* Dr. Kahn diagnosed bilateral calcaneal fractures and recommended orthopedic and podiatry consultations. *Id.*

Podiatrist Michael Piccarelli, M.D., examined Plaintiff at the ER and noted that his lower extremity pulses were faintly palpable due to edema, his heels were tender upon palpation, and his left foot was internally rotated. *Id.* at 247. Dr. Piccarelli diagnosed bilateral comminuted calcaneal

fractures.  He applied compression dressings and noted that surgery could not be performed until the swelling had decreased.  He ordered Plaintiff to remain non-weight bearing.  *Id.*  Because urinary drug screening tested positive for cocaine, Dr. Piccarelli referred Plaintiff for smoking and drug cessation counseling with a consulting psychiatrist.  *Id.* at 246.

On November 21 and December 1, 2011, Dr. Piccarelli performed open reduction internal fixation ("ORIF") to repair Plaintiff's right and left foot fractures.  *Id.* at 232-33, 234-35, 294-95, 323-24.  Dr. Piccarelli directed non-weight bearing status and elevation of both feet.  *Id.*

On December 5, 2011, Plaintiff was transferred from Richmond to Staten Island Care Center ("SICC") for short-term rehabilitation.  *Id.* at 228, 341.  Discharge diagnoses were bilateral calcaneal fractures and cocaine abuse.  Plaintiff was taking Dilaudid 4 mg, Colace 50 mg, Ambien 5 mg, and Lovenox 40 units subcutaneously daily at the time of discharge.  *Id.* at 228.

Plaintiff was evaluated for physical therapy ("PT") and occupational therapy ("OT") at SICC on December 5 and 6, 2011, and determined to be a candidate for restorative OT.  *Id.* at 584, 593.  OT was discontinued on December 13, due to Plaintiff's non-weight bearing status.  *Id.* at 594-95.

### b.  Medical Evidence On or After December 7, 2011 (SSI Application Date)

After the filing of his SSI application, Plaintiff saw podiatrist Dr. Kuda[2] at SICC postoperatively on December 12, 2011, who noted that Plaintiff had mild edema in his right foot.  *Id.* at 602.  Dr. Kuda diagnosed bilateral calcaneal fractures and ordered bilateral x-rays.  *Id.*

On December 20, 2011, Plaintiff had a pain management evaluation with Dr. Shapiro[3] at SICC.  *Id.* at 603.  Plaintiff complained of bilateral heel pain with difficulty walking and

---

[2] Dr. Kuda's full name is not listed on the consultation report.
[3] Dr. Shapiro's full name is not listed on the consultation report.

performing activities of daily living. *Id.* Dr. Shapiro observed decreased range of motion in Plaintiff's ankles and added Nucynta to Plaintiff's medication regimen. *Id.*

X-rays dated December 27, 2011 of both feet and heels demonstrated status post bilateral ORIF of calcaneal fractures with hardware intact. *Id.* at 574. Dr. Piccarelli re-examined Plaintiff on December 28, 2011 and found full range of motion in Plaintiff's right lower extremity and edema in his left leg. *Id.* at 604. He recommended that Plaintiff begin PT for his right foot and remain non-weight bearing in a wheelchair. *Id.*

Plaintiff saw Dr. Piccarelli for a follow up on January 16, 2012. *Id.* at 297. Dr. Piccarelli noted that Plaintiff was in a wheelchair, wearing bilateral fracture boots, and "doing well" with no reported pain. *Id.* at 297-98, 314-15. Dr. Piccarelli observed minimal edema and full range of motion in Plaintiff's right foot, and some limitations of motion in his left foot. *Id.* Dr. Piccarelli recommended that Plaintiff continue using a wheelchair, wear controlled ankle motion boots, and begin PT to improve range of motion and strength in his lower extremities. *Id.* In a letter dated the same day, Dr. Piccarelli reported that Plaintiff was expected to return to full activity in November 2012. *Id.* at 258.

X-rays dated January 26, 2012 of both heels demonstrated status post bilateral ORIF of calcaneal fractures with hardware intact. *Id.* at 575, 577. X-rays of both calcanei on February 3, 2012 revealed intact hardware, osteopenia, and no evidence of acute fracture deformity. *Id.* at 309, 322, 572.

Dr. Piccarelli examined Plaintiff on February 6, 2012. *Id.* at 299-300, 316-17, 321; *see also Id.* at 612. Dr. Piccarelli reviewed Plaintiff's x-rays and reports and noted good alignment and consolidation. *Id.* at 299. He observed full range of motion in the right leg with no pain or edema and recommended that plaintiff start bearing weight on the right, as tolerated. *Id.* at 299,

321. Dr. Piccarelli recommended non-weight bearing status on the left with the boot and physical therapy for left foot range of motion and pain control. *Id.*

At a February 13, 2012 follow-up appointment, Dr. Piccarelli noted that Plaintiff's right foot was stable with the boot and that his left foot still exhibited swelling, stiffness, and discomfort. *Id.* at 301-02, 318-19, 325. Dr. Piccarelli recommended PT and prescribed Percocet for pain. *Id.* He advised that Plaintiff bear weight on his right foot with a cane. *Id.*

On February 14 and 15, 2012, Plaintiff was assessed for PT at SICC due to gait abnormality and was ordered to receive PT at least five times per week for four consecutive weeks. *Id.* at 399-400, 589. On February 16, 2012, Plaintiff was ordered to discontinue use of the boot, proceed with weight bearing on his right side, and begin PT on his left foot. *Id.* at 401.

A February 27, 2012 SICC progress note indicated that Plaintiff's pain was well controlled with pain medication. *Id.* at 371. Plaintiff was discharged on March 6, advised to use crutches and perform his PT exercises, and follow up with his doctor regarding weight-bearing status. *Id.* at 342-47, 407. He was able to eat, walk, dress, shower, and move from bed to chair or standing without assistance, *Id.* at 345, and did not have significant pain. *Id.* at 407. At SICC, internist Sangita Parab, M.D., prescribed Percocet to be taken every 6 hours as needed, *Id.* at 353, Trazodone 25 mg, *Id.* at 354-55, Colace, *Id.* at 356, Klonopin, *Id.* at 357, and Ambien, *Id.* at 358, which were continued upon Plaintiff's discharge. *Id.* at 344.

Plaintiff returned to Staten Island Physician Practice on March 7, 2012, complaining of bilateral ankle pain that was rated 7 out of 10 in severity, was non-radiating, aching, and sharp, and that caused decreased mobility, limping, swelling, and tenderness. *Id.* at 705-07. He denied bone or joint symptoms, muscle weakness, bruising, crepitus, locking, or numbness. *Id.* Physician Assistant ("PA") Esther Hannan examined Plaintiff and found chronic edema, well healed scars,

decreased range of motion, and some tenderness.  *Id.*  She assessed status post bilateral ankle surgery with bilateral chronic foot pain.  Plaintiff requested stronger pain medication and was referred to pain management.  *Id.*

Mahendra Misra, M.D., performed a consultative examination on March 15, 2012.  *Id.* at 267-70.  Dr. Misra noted that Plaintiff was incarcerated from 2008 until 2011, underwent left knee surgery, and had a history of bipolar disorder.  *Id.* at 267-68.  Plaintiff complained of constant left ankle pain, aggravated by standing and walking, left ankle instability, and some swelling.  *Id.*  He also complained of similar, but less severe, symptoms in his right ankle.  *Id.*  Dr. Misra noted Plaintiff's ankle surgery and hardware insertion and that he was waiting to get braces.  *Id.* at 267.  Plaintiff reported that he could stand for ten minutes at a time, perform personal hygiene, sit for prolonged periods, walk one-half block at a time, and lift up to ten pounds.  *Id.* at 268.  Dr. Misra also noted that Plaintiff had taken public transportation to the exam.  *Id.*

Dr. Misra observed that Plaintiff ordinarily used a prescribed cane to walk and observed that he was only able to take a few short steps.  *Id.* at 269.  Plaintiff was able to perform heel-to-toe walking, but unable to do heel walking, toe walking, or squatting.  *Id.*  Plaintiff exhibited full range of motion in his cervical spine and upper limbs and was able to get on and off a couch.  *Id.* His ankle joint movements were restricted; there was no evidence of motor or sensory deficits in Plaintiff's extremities.  *Id.*  Deep tendon reflexes in all limbs were normal and equal bilaterally, and there was no atrophy.  *Id.*  Straight leg raising was performed to eighty degrees bilaterally, with some restriction caused by pain and spasm in the hamstring muscle.  *Id.*  Dr. Misra diagnosed status post fracture bilateral calcaneus and ORIF with hardware internal derangement.  *Id.* at 270. She opined that Plaintiff had not recovered completely and would not be able to perform any job that required prolonged standing, walking, crouching, climbing, crawling, lifting, pulling, or

pushing.  *Id.*

On March 26, 2012, Dr. Piccarelli noted that Plaintiff's right foot was stable.  *Id.* at 304. He referred Plaintiff to pain management and recommended that he restart physical therapy.  *Id.* Dr. Piccarelli provided a letter dated April 11, 2012, stating that Plaintiff was status post bilateral calcaneal fractures and attending rehabilitation.  *Id.* at 293.  Dr. Piccarelli anticipated that Plaintiff would fully recover by January 2013.  *Id.*

On May 11 and 14, 2012, Plaintiff called Staten Island Physician Practice to request a refill of his Percocet prescription due to pain.  *Id.* at 711, 712.  Plaintiff returned to Staten Island Physician Practice on May 15 in a third attempt to refill his pain medication.  *Id.* at 713.  He was seen by PA Eyal Schwartzmann, who assessed chronic foot pain, prescribed Ultram, and referred Plaintiff to a pain management specialist for further evaluation.  *Id.* at 714.  Plaintiff returned to Staten Island Physician Practice on May 17, 2012 with complaints of ankle pain.  *Id.* at 717. Internist Bruce Berman, M.D., examined Plaintiff and noted bilateral ankle swelling, tenderness, and decreased range of motion.  *Id.* at 718.  The doctor prescribed Percocet 5 mg, and referred Plaintiff to osteopath Don Pirraglia, M.D., for a physiatry consultation.  *Id.* at 719.

On June 1 and 4, 2012, Plaintiff again called Staten Island Physician Practice to request a refill of his Percocet prescription and an increase in dosage to 10 mg.  *Id.* at 723-24.  On June 5, Plaintiff called the office to ask why he had received a prescription for Percocet 5 mg and not 10 mg.  *Id.* at 725.  On June 22, Plaintiff called the office again to request a Percocet refill.  *Id.* at 726.

Plaintiff saw Dr. Piccarelli on July 23, 2012 and complained of pain and stiffness in his left foot.  *Id.* at 306.  Dr. Piccarelli noted that Plaintiff had not gone for physical therapy since his discharge from SICC and was not wearing his ankle-foot orthotic brace.  *Id.*  He observed Plaintiff ambulate well into the room without assistance.  *Id.* at 307.  Dr. Piccarelli found poor range of

motion in Plaintiff's left ankle and fair range of motion in his right ankle. *Id.* He recommended that Plaintiff use the ankle-foot orthotic brace for his left foot and restart physical therapy, and he cautioned that he might have missed the opportunity to recover a pain-free range of motion in his left leg. *Id.*

Plaintiff returned to Staten Island Physician Practice on July 24, 2012, with continued complaints of ankle pain. *Id.* at 727-30. Upon examination, internist Maureen Kelleher, M.D., noted greater limitations of motion in Plaintiff's left ankle than his right. *Id.* at 728. Dr. Kelleher recommended orthopedic and surgical re-examination of Plaintiff's ankles and prepared a drug contract and referral for a urine drug screen. *Id.* at 728-29, 732, 737.

On August 20, August 23, and September 11, 2012, Plaintiff called Staten Island Physician Practice to request a refill of his Percocet prescription. *Id.* at 735, 738, 739. On September 10, 2012, Plaintiff underwent a drug screening, which was negative. *Id.* at 765. Plaintiff returned to Staten Island Physician Practice on September 14, 2012 for a refill of his Percocet prescription. *Id.* at 740. Dr. Kelleher noted that Plaintiff complained of more pain in his right leg than his left, although she observed a full range of motion in both ankles with intact pulses and sensation. *Id.* at 740. She relayed that Plaintiff's orthopedist had offered to perform a fusion, but Plaintiff wanted to wait. *Id.* Dr. Kelleher refilled Plaintiff's Percocet prescription. *Id.* at 741. Bilateral ankle x-rays performed on September 24, 2012 at Staten Island Physician Practice revealed no acute fracture, intact ankle joints, and fixation of the calcaneus bilaterally. *Id.* at 771.

In a letter dated September 14, 2012, Dr. Kelleher stated that Plaintiff continued to experience residual pain in his ankles and walked with cane. *Id.* at 744. The letter further stated that Plaintiff's pain medication provided only minimal relief and he was consulting with an orthopedist regarding the possibility of fusion surgery. *Id.* The letter concluded that Plaintiff was

not able to work at that time.  *Id.*

On October 10 and October 15, 2012, Plaintiff again called Staten Island Physician Practice to request a refill of his Percocet prescription.  *Id.* at 745-46.  He saw Dr. Kelleher on October 22, 2012 with complaints of bilateral calcaneal pain.  *Id.* at 747.  Dr. Kelleher examined Plaintiff and documented his complaints of calcaneal pain upon palpation.  *Id.* at 748.  She referred Plaintiff to his original surgeon, renewed his Percocet prescription, and ordered a drug screen.  *Id.* at 748-49.  The drug screen result, if available, was not in the Certified Administrative Record.  On November 21 and December 18, 2012, and on January 9, 2013, Plaintiff called Staten Island Physician Practice to request a refill of his Percocet prescription.  *Id.* at 752-54.

On February 12, 2013, Plaintiff went to the Dr. Kelleher with complaints of chronic pain.  *Id.* at 755-58.  Dr. Kelleher noted limited range of motion in both ankles upon examination and advised Plaintiff to get x-rays and return to his podiatrist.  *Id.* at 756.  The record contains a second letter by Dr. Kelleher dated February 12, 2013, stating that Plaintiff experienced chronic pain when he walked could not stand for more than twenty minutes and could not perform any job activities.  *Id.* at 760.  She further noted that Plaintiff might need academic help getting a general educational development ("GED") certificate.  *Id.*

On March 5, 2013, Plaintiff underwent another drug screening, which was negative.  *Id.* at 766.  On March 11 and April 9, 2013, Plaintiff called Staten Island Physician Practice to request a refill of his Percocet prescription.  *Id.* at 761, 764.

Dr. Kelleher completed a Multiple Impairment Questionnaire dated May 10, 2013.  *Id.* at 775-82.  She reported seeing Plaintiff on a monthly basis for severe ankle pain and noted that he experienced pain to palpation, trouble walking, and constant pain while walking.  *Id.* at 775-77.  She opined that Plaintiff could continuously sit for up to three hours and stand or walk for zero to

one hours in an eight-hour day.  *Id.* at 777.  She also reported that it would be necessary for Plaintiff

not to stand or walk continuously in a work setting.  *Id.* at 778.  Dr. Kelleher further concluded

that Plaintiff could never lift or carry any weight, *Id.*, and he could not perform a full time

competitive job that required activity on a sustained basis.  *Id.* at 780.  She opined that Plaintiff

likely would be absent from work more than three times a month and that he was unable to work.

*Id.* at 780-81.

### III.    Evidence Submitted to Appeals Council After ALJ Decision

Plaintiff proffered to the Appeals Council a November 10, 2013 report by Dr. Kelleher.  *Id.*

at 10.  The physician stated Plaintiff had chronic pain in his heels, especially when walking, and

that he was incapable of performing any form of competitive full time work.  *Id.*  She opined that

he was limited to sitting for up to three hours and walking or standing for less than one hour in an

eight-hour workday.  *Id.*  She further opined that Plaintiff could not push, pull, kneel, bend, or

stoop, and that his pain, fatigue, and other symptoms were severe enough to interfere constantly

with his attention and concentration.  *Id.*  She stated that a Multiple Impairment Questionnaire

dated May 10, 2013 remained accurate to date.  *Id.*

### DISCUSSION

### A.  Standard of Review

Unsuccessful claimants seeking disability benefits under the Act may appeal the

Commissioner's decision by seeking judicial review and bringing an action in federal district court

"within sixty days after the mailing . . . of notice of such decision or within such further time as

the Commissioner of Social Security may allow."  42 U.S.C. § 405(g).  In reviewing the final

determination of the Commissioner, a district court must determine whether the correct legal

standards were applied and whether substantial evidence supports the decision.  *See Zabala v.*

*Astrue*, 595 F.3d 402, 408 (2d Cir. 2010); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *see Schaal*, 134 F.3d at 501. If the district court finds that there is substantial evidence supporting both the claimant's and Commissioner's position, it must rule for the Commissioner, as that position is based on the factfinder's determination. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal citations omitted); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (affirming Commissioner's decision where substantial evidence supported either side).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (internal citations omitted). A remand to the Commissioner also is appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). Unlike judges in trial, ALJs have a duty to "affirmatively

develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) (quotations omitted).

## B. Disability Claims

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Further, the claimant's impairment must have been of such severity that she is unable to do her previous work or, considering her age, education, and work experience, she could not have engaged in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The claimant bears the initial burden of proving disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged" and which leads to the conclusion that the individual has a disability. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(A), (D); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act, as set forth in 20 C.F.R. §§ 404.1520 and 416.920. The inquiry ends at the earliest step at which the ALJ determines that the claimant is either disabled or not disabled. First, the claimant is not disabled if she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a

"severe impairment," without reference to age, education, and work experience. Impairments are "severe" if they significantly limit a claimant's physical or mental ability to conduct basic work activities. If the claimant does not have a severe impairment, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's RFC in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). At the fourth step, the claimant is not disabled if she possesses the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). RFC is defined in the applicable regulations as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). To determine RFC, the ALJ makes a "function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch . . . ." *Sobolewski v. Apfel*, 985 F. Supp. 300, 309 (E.D.N.Y. 1997). The results of this assessment determine the claimant's ability to perform the exertional demands of sustained work and may be categorized as sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567.

Finally, at the fifth step, the ALJ considers factors such as age, education, and work experience alongside her RFC to determine whether the claimant could adjust to other work that exists in the national economy. If the claimant could make such an adjustment, she is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this final step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F.2d at 642).

## C. The ALJ's Decision

On June 19, 2013, the ALJ issued a decision denying Plaintiff's claims and concluding that Plaintiff was not disabled within the meaning of the Act. R. at 23-41. The ALJ followed the five-step procedure in making his determination. *Id*. at 31. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application dated December 7, 2011. *Id.* at 28. Second, the ALJ found the following severe impairments: fractured ankles bilaterally status post open reduction internal fixation surgeries, impulse control disorder, antisocial disorder, mild to moderate dysthymic disorder, and substance addiction disorder. *Id.* Third, the ALJ concluded that Plaintiff did not have impairments, in combination or individually, that meet or medically equal the criteria of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 29.

Fourth, the ALJ found that Plaintiff could perform sedentary work, as defined by 20 C.F.R. § 416.967(a), with the physical limitations that he use a handheld assistive device for ambulation and that he never operate foot controls with his lower extremities. *Id.* at 31. The ALJ held that Plaintiff should be limited to simple, routine, and repetitive tasks that can be explained and would involve only occasional changes in routine unskilled or entry-level work. *Id.* The ALJ found that, though the Plaintiff's medically determinable impairments reasonably could be expected to cause some of his alleged symptoms, not all the allegations could be found to be credible. *Id.* at 32. Specifically, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with the objective medical evidence and his own statements. *Id.* at 32-33. As to Dr. Kelleher, the ALJ gave the doctor's opinion little weight. *Id.* at 35. Further, the ALJ cited to the Plaintiff's reported activities on the record and in his testimony as an indication that he would be able to perform sedentary activities. *Id.*

Fifth, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as surveillance systems monitor, addressor, and order clerk. *Id.* at 36-37.

Thus, the ALJ concluded Plaintiff was not disabled. R. at 37. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *Id.* at 1-7.

### D. Analysis

Plaintiff moves for judgment on the pleadings, seeking reversal of the denial of benefits on the grounds that the ALJ failed to apply properly the treating physician rule in evaluating Dr. Kelleher's opinion and failed to evaluate properly Plaintiff's credibility. *See* Pl. Mem. at 12-20. The Commissioner cross-moves for judgment on the pleadings, seeking affirmance of the denial of Plaintiff's SSI benefits on the grounds that the factual findings are supported by substantial evidence and that the ALJ properly determined that Plaintiff was not disabled. *See generally* Def. Mem. Upon review of the record, the Court finds that the ALJ applied the correct legal standards and substantial evidence supports his decision.

#### 1. Unchallenged Findings

The ALJ's findings as to steps one, two and three are unchallenged. *See generally* Pl. Mem. Upon a review of the record, the Court concludes that the ALJ's findings at steps one through three are supported by substantial evidence.

#### 2. Plaintiff's RFC

The ALJ found that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with limitations. R. at 31. "Sedentary work" is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is

defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a); *see also Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996). Sedentary work does not require the ability "to sit for six unbroken hours without standing up or shifting position during a work day." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Plaintiff has the burden of proving that he was unable to perform sedentary work. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (explaining that at the fifth step, the Commissioner has the "limited burden" of showing "that there is work in the national economy that the claimant can do" and that the Commissioner "need not provide additional evidence of the claimant's residual functional capacity"). An ALJ is entitled to rely on the lack of findings regarding Plaintiff's physical limitations in assessing his capacity to perform sedentary work. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say."); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) ("[I]t was proper for the ALJ to rely on the absence of findings by any physician concerning plaintiff's alleged inability to sit for prolonged periods in deciding that she could resume her work as a sewing machine operator.")

Here, the ALJ correctly determined that there is no medical evidence indicating that Plaintiff's symptoms hindered his ability to perform sedentary work, and substantial evidence in the record supports the ALJ's RFC assessment. Though Plaintiff testified that he could only stand for ten to fifteen minutes and sit for twenty to thirty minutes, substantial evidence contradicted his testimony and warranted the ALJ's decision to the contrary. In 2012, post-surgery and during

treatment for his ankle fractures, Plaintiff's report stated that he did not have any problems attending to his personal care needs and that he performed household activities, without any help, such as cleaning, ironing, and watering his plants. *See* R. at 183-85, 273. Further, Plaintiff testified that he went outside three to four times a week, had the ability to go outside alone, could perform shopping needs by going to stores, and had the ability to manage his own finances. *Id.* at 185. In June 2013, Plaintiff testified that on a typical day he sat and watched television and surfed the internet. *Id.* at 67. Notably, though Plaintiff testified to needing to stand and stretch every twenty to thirty minutes, this is not outside the definition of sedentary work as defined in 20 C.F.R. § 416.967(a). *See Poupore*, 566 F.3d at 306 ("[T]he requirement that [Plaintiff] get up and move around from time to time does not preclude his ability to perform sedentary work."). The ALJ was entitled to rely on this testimony regarding Plaintiff's physical limitations in his assessment of Plaintiff's capacity to perform sedentary work. *See Ventura v. Barnhart,* 2006 WL 399458, at *1, *6 n.13 (S.D.N.Y. Feb. 21, 2006) (holding that the ALJ was entitled to rely on Plaintiff's testimony, even when it contradicted Plaintiff's earlier statement in his application, in making his RFC assessment). These activities support the ALJ's finding that Plaintiff's RFC enables him to perform sedentary work.

Substantial evidence exists in the medical records as well. Post ORIF surgery, Plaintiff reported his pain as well controlled with treatment and rehabilitation at SICC. *Id.* at 371. Upon his discharge from SICC, Plaintiff was able to eat, walk, dress, shower, and move from bed to chair or standing without assistance, *Id.* at 345, and he did not have significant pain. *Id.* at 407. Moreover, a subsequent physical examination of Plaintiff revealed that, while there were "restricted movements of both ankle joints," Plaintiff could sit for prolonged periods of time and lift up to about ten pounds. *Id.* at 268-69.

Thus, though Plaintiff's chronic ankle pain limits Plaintiff from standing or walking for prolonged periods of time, *Id.* at 267-68, it does not undermine the ALJ's assessment that Plaintiff is capable of performing sedentary work. Accordingly, the Court finds that there is substantial evidence supporting the ALJ's RFC finding.

### 3. Application of Treating Physician Rule to the Opinion of Dr. Kelleher

Plaintiff argues that the ALJ improperly applied the treating physician rule in giving "little weight" to the opinion of treating physician Dr. Kelleher and "some weight" on the opinion of consultative physician Dr. Misra. *See generally* Pl. Mem. 12-16. Plaintiff also alleges that the ALJ failed to identify substantial evidence contradicting Dr. Kelleher's opinions and, instead, improperly imposed his own judgment of necessary medical treatment in identifying Plaintiff's non-compliance with treatment recommendations. *Id.* at 13-14. Finally, he argues that, even if the ALJ was not required to give the treating physician controlling weight, the treating physician's opinion still was entitled to deference after full consideration of the factors in 20 C.F.R. § 416.927(c)(2)-(6). *Id.* at 16. The Court disagrees.

An ALJ must give controlling weight to the opinion of a treating physician with respect to "the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 416.927(c)(2); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (*per curiam*); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record."

*Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quotation marks and alteration omitted).

However, "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record," *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)), such as the opinions of other medical experts. *Halloran*, 362 F.3d at 32. Where a treating source's opinion is not given controlling weight, the ALJ must assess several factors to determine the proper weight accorded, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 416.927(c)(2)-(6). Some findings, including the ultimate finding of whether a claimant is disabled and cannot work, are reserved to the Commissioner and, therefore, are never given controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotation marks omitted). Nevertheless, the ALJ must "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Greek*, 802 F.3d at 375 (quotation marks and alteration omitted). A failure to provide "good reasons" for "not crediting the opinion of the claimant's treating physician is a ground for remand." *Id.* (quotation marks omitted). At no point is the ALJ permitted "to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Id.*

The Court finds substantial evidence in the record that contradicts Dr. Kelleher's opinions. Dr. Kelleher found that Plaintiff could not sit for more than a total of three hours in an eight-hour workday and could stand or walk only up to an hour in an eight-hour workday. R. at 777. The ALJ observed that Dr. Kelleher's finding was inconsistent with the evidence on the record and

Plaintiff's own testimony regarding his daily activities. *Id.* at 35, 67, 184. The ALJ fully was entitled to weigh Dr. Kelleher's opinion against the entirety of the medical record and Plaintiff's testimony to reach a determination as to Plaintiff's RFC. *See Alston v. Sullivan*, 904 F.2d 122, 127 (2d Cir. 1990) (finding the ALJ, in his role as the fact finder, fully is entitled to decide that plaintiff could perform sedentary work despite plaintiff's testimony and a medical opinion to the contrary). When discharged from rehabilitation at SICC, Plaintiff reported being able to perform daily activities such as cleaning, ironing, and watering plants on his own, as well as being able to go outside three to four times a week. R. at 184. Though Plaintiff testified he was no longer able to do these things at the time of his hearing, Dr. Kelleher's opinion still was inconsistent with Plaintiff's testimony that he spent a typical day sitting and watching television and surfing the internet. *Id.* at 67. Plaintiff also testified that, although he had difficulty sitting for a long period of time, he was able to get up to stretch when he experienced pain. *Id.* This medical evidence, coupled with Plaintiff's testimony, is sufficient to contradict Dr. Kelleher's opinion.

Additionally, the ALJ did not impose his own judgment on what was deemed necessary medical treatment. Plaintiff relies on *Burgess* to argue that the ALJ inappropriately criticized Plaintiff's treatment as only including pain management and not more aggressive measures. Pl. Mem. 13-14. In *Burgess*, the Second Circuit vacated and remanded a denial of benefits because an ALJ's decision relied, in part, on his finding that the plaintiff's recommended treatment was too conservative, noting that there was no recommendation for "stronger pain medication." 537 F.3d at 130. The *Burgess* ALJ's assertion that the prescribed treatment was too conservative was in direct contradiction to the treating physician's explanation for a recommended treatment of over-the-counter pain medication only. *Id.* In *Burgess*, the treating physician stated that he did not prescribe stronger pain medication because the plaintiff's long-term condition only allowed

for limited pain medication treatment. *Id.* Accordingly, the ALJ's determination that the prescribed treatment was too conservative ignored the treating physician's medical opinion and, instead, substituted in his own judgment as to the propriety of the treatment.

Unlike the ALJ in *Burgess*, the ALJ here did not impose his own view on the propriety of the treating physician's recommended treatment. The ALJ did not criticize Plaintiff's pain management treatment as too conservative. The Court interprets the ALJ's statement that Plaintiff relied "solely on pain management without undergoing any other treatment since March 2012," R. at 35, to refer to Plaintiff's own decision, and not the decisions of his physicians, to rely on pain medication alone to mitigate his symptoms. Plaintiff's argument that the ALJ improperly criticized Plaintiff's reliance on pain management alone because "[n]o doctor has suggested additional 'aggressive' treatment," Pl. Mem. 14, is flatly incorrect. The record shows that Plaintiff's treating podiatrist, Dr. Piccarelli, indeed had prescribed physical therapy *in addition to* pain medication on numerous occasions. *See* R. at 297-98, 299, 301-02, 306. Therefore, the ALJ's critique of Plaintiff's reliance on pain medication alone does not impose his own judgment of what is necessary medical treatment. Rather, it shows a consideration of the full record, the treating podiatrist's recommendations for physical therapy, and Plaintiff's decision to reject treatment beyond pain medication to alleviate his symptoms.

Moreover, the ALJ was not required to apply the legal standard set forth in SSR 82-59 when discrediting Dr. Kelleher's opinion, in part due to the Plaintiff's non-compliance with treatment. As the Commissioner correctly argues, the requirements of SSR 82-59 are not applicable to the instant case. SSR 89-59 provides that an "individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the [agency] determines can be expected to restore the individual's

ability to work, cannot by virtue of such 'failure' be found to be under a disability." SSR 82-59. This provision applies to the ALJ's final determination of disability, not the determination of weight to give a physician's opinion, which is one of many factors considered in determining a claimant's disability.

The Second Circuit provides guidance on the application of SSR 82-59. "SSR 82-59 normally applies to a claimant's eligibility for benefits *after* a finding of disability has been made," and an ALJ "must provide the claimant with an opportunity to address the issue" or the ALJ "loses the ability to assert it as a reason for denying disability benefits." *Grubb v. Apfel*, 2003 WL 23009266, at *5 (S.D.N.Y. Dec. 22, 2003) (emphasis added). In *Grubb*, the record was unclear as to what role the plaintiff's non-compliance played in the ALJ's decision to deny benefits. After an examination of the record, the *Grubb* court determined that the ALJ's decision inherently had relied on the conclusion that Plaintiff had been non-compliant with treatment and did not offer good reasons for such non-compliance. *Id.* at *7. Accordingly, the *Grubb* court remanded the case, reasoning that, because the ALJ's decision rested inextricably on this conclusion, he was obligated to meet the requirements of SSR 82-59. *Id.* at *8. Similarly, in *Belen v. Astrue*, which Plaintiff solely relies on to support his argument for the application of the SSR 82-59 standard, the court also found the record to be unclear as to how ALJ's statement regarding the plaintiff's non-compliance factored into his ultimate decision of benefits. *Id.* at *13 ("[T]he ALJ's only comment on Belen's alleged non-compliance does not make clear what role Belen's failure to take her prescribed medication played in the ALJ's decision . . . ."). Again, because the court was uncertain as to how the *Belen* plaintiff's non-compliance factored into the disability determination, the court ordered that, on remand, the ALJ meet the requirements of SSR 82-59 if non-compliance was the express or implied basis for his decision. *Id.*

Here, the ALJ was clear as to how Plaintiff's failure to comply with treatment recommendations contributed to his decision. Plaintiff's non-compliance was neither the express nor the implied basis for the denial of benefits. Rather, the ALJ considered the non-compliance in his decision as to how much weight to afford the treating physician, R. at 35, and in determining Plaintiff's credibility, *Id.* at 33. Moreover, the ALJ did not rely solely on Plaintiff's non-compliance as the basis for giving Dr. Kelleher's opinion "little weight." R. at 35. Rather, he considered this non-compliance alongside other evidence to determine the proper weight to give Dr. Kelleher's opinion. *Id.* Other Circuits have found that a plaintiff's non-compliance with recommended or prescribed treatment can serve as evidence of inconsistency with a treating physician's opinion, *see* 20 C.F.R. § 416.927(c)(4), and, therefore, can be considered in determining whether to give controlling weight to the treating physician. *See Chaney v. Colvin*, 812 F.3d 672, 679 (8th Cir. 2016) (citing *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly discounted the treating physician's opinion when it did not take into account plaintiff's non-compliance with recommended treatment)); *Owen v. Astrue*, 551 F.3d 792, 800 (8th Cir. 2008) ("But a claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion and, therefore, can be considered in determining whether to give that opinion controlling weight."); *Anderson v. Comm'r, Soc. Sec. Admin.*, 441 F. App'x 652, 654 (11th Cir. 2011) (holding that the ALJ had good cause to give a psychiatrist's opinion less weight because the opinion contained inconsistencies with his own treatment notes and did not address the claimant's non-compliance with treatment). The ALJ did not find disability and deny SSI benefits *because of* Plaintiff's non-compliance, per *Grubb* and *Belen*. Accordingly, the requirements of SSR 82-59 do not apply.

Finally, the ALJ assigned the proper weight to Dr. Misra's opinion. Where a consulting

physician's opinion is more consistent with the record as a whole, the opinion may be given more weight than the treating physician's opinion. *See Padro v. Astrue*, 2012 WL 3043166, at *6 (E.D.N.Y. July 25, 2012); *Oliphant v. Astrue*, 2012 WL 3541820, at *19 (E.D.N.Y. Aug. 14, 2012) ("The Second Circuit has held that if the record supports a consultative, non-examining medical opinion, the ALJ may accord that opinion greater weight than the opinion of a treating physician."). Dr. Misra opined that Plaintiff had "not recovered completely" and would not be able to "do any job which requires prolonged standing, walking, crouching, climbing, crawling, lifting, pulling or pushing." R. at 270. Notably, the evidence discussed as contradictory to Dr. Kelleher's opinion corroborates Dr. Misra's opinion. For example, Dr. Misra's opinion is consistent with Plaintiff's own testimony that he can sit and watch television or surf the internet on a daily basis. *Id.* at 67. Hence, the ALJ was entitled to give the opinion of Dr. Misra greater weight than Dr. Kelleher's in determining Plaintiff's RFC.

While the ALJ did not explicitly reason through all the factors an ALJ must consider when determining the weight to give to a treating physician, the rationale the ALJ provided does not "traverse the substance of the treating physician rule." *See Halloran*, 362 F.3d at 32 (finding that although the ALJ did not explicitly consider the treating physician rule, a review of the record revealed that the substance of the rule was present and remand was not necessary). Remand is not necessary because the ALJ's rationale shows a thorough consideration of the required factors, and the ALJ gave well reasoned, specific explanations for the weight he gave Dr. Kelleher's opinion. SSR 96-2p provides that, when an ALJ denies benefits, the decision must be sufficiently specific to make clear to any subsequent reviewers why the ALJ accorded the treating physician the given weight. Here, the ALJ's reasoning both for according Dr. Kelleher "little weight" and Dr. Misra "some weight" are sufficiently specific, allowing the Court to conclude that the ALJ properly

applied the relevant legal standards of the treating physician rule.

### 4. Plaintiff's Credibility

Plaintiff contends that the ALJ's credibility findings are not supported by substantial evidence and that the ALJ improperly denied Plaintiff's disability claim based on his non-compliance with recommended treatment and the impact that substance abuse had on his disability. *See* Pl. Mem. 17-20. Plaintiff further alleges that the ALJ misconstrued Plaintiff's ability to engage in "short-lived and sporadic activities of daily living" as an ability to perform sedentary work according to an ordinary work schedule. *Id.* at 19. The Court disagrees.

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *See Taylor v. Barnhart,* 83 F. App'x 347, 350 (2d Cir. 2003). However, the ALJ is afforded discretion to assess the credibility of a claimant and is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue,* 687 F. Supp.2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue,* 280 F. App'x 20, 22 (2d Cir. 2008)). To determine Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue,* 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (*per curiam*); 20 C.F.R. §§ 404.1529(b), 416.929(b); *see* SSR 16-3p. At the first step, Plaintiff's allegations "need not be substantiated by medical evidence, but simply consistent with it" because the "entire purpose" of § 416.929 is "to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence." *McClinton v. Colvin*, 2015 WL 6117633, at *31 (S.D.N.Y. Oct. 16, 2015) (internal citation omitted). Second, if the ALJ finds that the individual suffers from a medically determinable impairment that

reasonably could be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's capacity for work. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see* SSR 16-3p.

If Plaintiff's testimony concerning the intensity, persistence, or functional limitations associated with his impairments is not fully supported by objective medical evidence, the ALJ must evaluate the claimant's credibility in light of seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(2)(i)-(vii); *Meadors v. Astrue*, 370 F. App'x 179, 183-84 (2d Cir. 2010) (Summary Order).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart*, 687 F. Supp.2d at 435. When the ALJ neglects to discuss at length his credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Jaeckel v. Colvin*, 2015 WL 5316335, at *9-11 (E.D.N.Y. Sept. 11, 2015) (remanding where "the ALJ failed to consider all the factors . . . and explain how he balanced those factors"); *Valet v. Astrue*, 2012 WL 194970, at *22

(E.D.N.Y. Jan. 23, 2012) (remanding where the ALJ "considered some, but not all of the mandatory" factors); *Grosse v. Comm'r of Soc. Sec.,* 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding that the ALJ committed legal error by failing to apply factors two through seven).

Here, the ALJ properly conducted the requisite two-step process in evaluating Plaintiff's assertion regarding the limiting effects of his pain. R. at 32. First, after reviewing the evidence, the ALJ determined that Plaintiff had medically determinable impairments that reasonably could be expected to cause some of the alleged symptoms. *Id.* ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.") At the second step, however, the ALJ found that not all of the alleged symptoms were credible. *Id.* Specifically, the ALJ found that "objective medical evidence does not support the claimant's allegations that his symptoms hinder his ability to work," suggesting his condition was not severe as alleged. *Id.*

The ALJ then properly considered the seven factors required by 20 C.F.R. § 404.1529(c) to evaluate Plaintiff's testimony. In addition to considering Plaintiff's daily activities, the ALJ reviewed Plaintiff's reported improvements upon discharge from SICC, prescribed medication, and additional treatment beyond the prescribed medication. *Id.* at 32-33. Although the ALJ did not explicitly cite to the seven factors relevant to Plaintiff's credibility assessment, this is not cause for remand because the determination is supported by substantial evidence in the record. *See Cichocki v. Astrue*, 534 Fed. Appx. 71, 75 (2d Cir. 2013) (Summary Order) ("While the ALJ did not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), he provided specific reasons for his credibility determination . . . . Because the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility determination does not require

remand.") (citation omitted).

The ALJ based his credibility assessment on inconsistencies between Plaintiff's allegations that his symptoms hinder his ability to work and the objective medical evidence on record. R. at 32-33. For example, Plaintiff testified that he could not lift anything over five pounds when standing, that he could only stand for ten to fifteen minutes at a time, that he could only sit for twenty to thirty minutes at a time, and that he only could walk eighty to one hundred feet. *Id.* at 67. However, the ALJ found evidence in the record that was inconsistent with this testimony. *Id.* at 32. The ALJ cited to Plaintiff's discharge report from his rehabilitation center, which indicated that, post-ankle surgery, Plaintiff was released due to lack of significant pain and had reported that his pain was well controlled through medication. *Id.* at 407, 416. Further evidence in the record indicated Plaintiff had failed to follow up with medical treatment to repair his ankles, instead relying solely on prescription medication to manage his pain. *Id.* at 710, 711, 719, 725, 727.

Again, the ALJ was not required to apply the standards set forth in SSR 82-59. As the Commissioner correctly argues, SSR 96-7p applies instead. SSR 96-7p provides that a claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *See also Green v. Astrue*, 2007 WL 2746893, at *8 (S.D.N.Y. Sept. 17, 2007) (citing SSR 96-7p). Plaintiff's non-compliance with treatment supports the ALJ's credibility determination. The medical record shows that Plaintiff's treating podiatrist consistently prescribed physical therapy to treat Plaintiff's ankle pain and restore the range of motion. R. at 297-98, 299, 301-02, 306. Significantly, the treating podiatrist explained to Plaintiff that his non-compliance with treatment may have caused him to have "lost the window for pain free [range of motion] of [left] foot." *Id.* at 307.

Accordingly, Plaintiff's repeated non-compliance with treatment, aimed at minimizing his pain and restoring the use of his ankles, supports the ALJ's credibility determination.

The ALJ also was not required to apply the framework of 20 C.F.R. § 416.935 when evaluating Plaintiff's prior substance abuse. The regulation states that when there is medical evidence of drug addiction or alcoholism, the ALJ will determine if such substance abuse is "a contributing factor material to the determination of disability," even if a claimant would qualify otherwise for disability benefits under the five-step analysis. 20 C.F.R. § 416.935; 42 U.S.C. § 423(d)(2)(C). However, 20 C.F.R. § 416.935 is irrelevant because the ALJ did not consider Plaintiff's substance abuse in the determination of his disability. Rather, the ALJ considered the drug use as one consideration toward finding Plaintiff's symptom allegations as not credible. R. at 32-33. The ALJ is entitled to consider this factor as one of several factors relevant to determining Plaintiff's credibility. *See Wazeter v. Comm'r of Soc. Sec.*, 2009 WL 2032076, at *6 (S.D.N.Y. July 6, 2009) (finding that, in the ALJ's credibility assessment, the ALJ "properly accounted for substantial evidence that plaintiff's claims of debilitating pain were in large part motivated by drug-seeking behavior"); *Williams v. Commissioner of Social Security*, 423 F. Supp.2d 77, 84 (W.D.N.Y. 2006) (ALJ may consider Plaintiff's history of substance abuse in determining Plaintiff's credibility, as long as additional factors were considered as well)*; Arrington v. Astrue*, 2011 WL 3844172, at *13 (W.D.N.Y. Aug.8, 2011) ("[A]lthough the ALJ may consider Plaintiff's history of bank robbery and substance abuse in determining Plaintiff's credibility, the ALJ is required to consider additional factors necessary to a proper credibility assessment.") (citation omitted).

Finally, regarding Plaintiff's ability to participate in limited daily activities, an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional

limitations it has caused." *Rivers v. Astrue*, 280 Fed. Appx. 20, 22 (2d Cir. 2008). Though an ALJ's discretion is not boundless, where the findings are supported by substantial evidence, they are conclusive. *Correale-Englehart*, 687 F. Supp.2d at 435 (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). Substantial evidence in the record supports the ALJ's credibility determination regarding Plaintiff's daily activities, particularly that Plaintiff could sit for prolonged periods and lift up to ten pounds. *Id.* at 269. Accordingly, Plaintiff's daily activities and functional capabilities support the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's cross-motion for judgment on the pleadings is granted. Plaintiff's motion for judgment on the pleadings is denied. The appeal is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      September 30, 2016

_____
/s/
DORA L. IRIZARRY
Chief Judge
